

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 5 2019

for CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on July 25, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WASHINGTON STATE HOUSING FINANCE COMMISSION, a public body Corporate and politic of the State of Washington,<br><br>Petitioner,<br><br>v.<br><br>NATIONAL HOMEBUYERS FUND, INC., f/k/a Homebuyers Fund, Incorporated, a California nonprofit corporation; GOLDEN STATE FINANCE AUTHORITY, f/k/a California Home Finance Authority, f/k/a/ California Rural Home Mortgage Finance Authority, a California joint powers authority; RURAL COUNTY REPRESENTATIVES OF CALIFORNIA, f/k/a Regional Council of Rural Counties, f/k/a Mountain Counties Water Resources Association, a California nonprofit corporation,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 96063-1<br><br>EN BANC<br><br>Filed: _____ JUL 2 5 2019 |

YU, J. — This case asks us to review whether petitioner Washington State

Housing Finance Commission (Commission) has standing to challenge respondent

National Homebuyers Fund's (NHF)[1] authority to provide down payment assistance to Washington residents in conjunction with federally insured mortgages. The Commission is a Washington public body with delegated authority to provide down payment assistance within the state in a governmental capacity. NHF is a California nonprofit corporation established by several California counties to offer down payment assistance to home buyers nationwide. The Commission alleges that NHF is falsely claiming governmental authority when it provides down payment assistance in Washington, thus its activities impermissibly compete with the Commission's own activities. The Commission brought this suit to challenge NHF's alleged lack of authority to operate in this state.

The Court of Appeals reversed the trial court's summary judgment in favor of the Commission on the basis that the Commission lacked standing. We reverse and hold that the Commission has standing to bring this action. In doing so, we express no opinion on the merits of the Commission's claims.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The legislature, in response to a serious shortage of affordable housing, established the Commission in 1983 for the purpose of making "additional funds

---

[1] Also named as defendants are the two associations of California counties that created NHF, Rural County Representatives of California and Golden State Finance Authority.

available at affordable rates to help provide housing throughout the state." LAWS OF 1983, ch. 161, § 1; RCW 43.180.010. The Commission accomplishes this mission without using public funds or lending the credit of the state through bond issuances and revenue it generates from its housing programs. One of these programs assists low-income and first-time home buyers qualify for a mortgage by lending them funds for the required down payment. These are low or no interest loans that do not need to be paid back until either the primary mortgage is paid or the home is sold.

NHF is a California nonprofit public benefit corporation formed by Rural County Representatives of California (RCRC) and Golden State Finance Authority (GSFA). RCRC is a California nonprofit mutual benefit corporation founded by several counties in California to provide services to those counties and advocate on their behalf. GSFA is a joint powers authority created by these same counties to offer home ownership assistance to their residents. NHF was formed for the purpose of providing down payment assistance to low- and moderate-income home buyers throughout the United States. The assistance comes in the form of a gift (which NHF also calls a grant) of up to five percent of the purchase price, which the home buyer does not need to repay.

Both the Commission and NHF offer their programs in conjunction with primary mortgages that are insured through the Federal Housing Administration's

(FHA) mortgage insurance program. Each partners with participating lenders that provide the primary mortgage. These insured loans are then purchased, bundled into mortgage backed securities, and sold for a profit on the open market. The Commission reinvests these proceeds into its housing programs that benefit Washington residents. NHF also uses a portion of its proceeds to expand its housing programs nationwide and distributes excess funds to RCRC to benefit its member counties.

The FHA, a part of the United States Department of Housing and Urban Development (HUD), promotes home ownership for those who may not qualify for a conventional mortgage by protecting lenders against losses in the event the borrower defaults on the loan. These loans are made by FHA approved lenders, who must ensure the loans comply with detailed underwriting guidelines published by HUD.[2] One such requirement is that the home buyer pay a minimum 3.5 percent down payment. *See* 12 U.S.C. § 1709(b)(9)(A).

FHA restricts where the funds for this minimum down payment can come from. Borrowers may receive gifts from certain sources, such as family members, charitable organizations, and government housing programs. But no part of the minimum down payment can come from a "person or entity that financially

---

[2] Our discussion of the requirements of the FHA mortgage insurance program is meant to provide context to the Commission's claims, not to interpret federal law.

benefits from the transaction." 12 U.S.C. § 1709(b)(9)(C)(i). This restriction does not apply to gifts or secondary loans made by a government entity acting in its governmental capacity within its jurisdiction. Federal Housing Administration: Prohibited Sources of Minimum Cash Investment Under the National Housing Act—Interpretive Rule, 77 Fed. Reg. 72,219, 72,220 (Dec. 5, 2012).

These requirements are at the center of the dispute between the parties. The Commission is an "instrumentality of the state exercising essential government functions." RCW 43.180.040(1). The legislature has authorized the Commission to "secure to itself and the people of the state the benefits" of federal housing programs by making loans for down payment assistance. RCW 43.180.050(1)(d)-(e). The Commission alleges that NHF is falsely asserting the same governmental authority in Washington by providing funds that only authorized government entities can provide and marketing itself as governmental.

NHF disputes these allegations. It asserts that while it meets HUD's definition of a government entity (because it is exempt from federal taxation pursuant to section 115 of the Internal Revenue Code), it is acting in a proprietary, rather than governmental, capacity when it gifts funds to borrowers in Washington. In NHF's view, it is not an "entity that financially benefits from the transaction" within the meaning of 12 U.S.C. § 1709(b)(9)(C) because it receives revenue only from the sale of mortgage backed securities, not from the individual loan

transactions. Consequently, it does not need to invoke the exception for government entities acting in their governmental capacity.

The Commission filed this lawsuit in 2015, arguing that NHF was unlawfully invoking governmental authority in this state and interfering with the Commission's mission and programs. The Commission sought a declaratory judgment that NHF's ongoing activities in Washington are unauthorized and may not continue. The Commission also sought an injunction prohibiting NHF from any further provision of homeownership financing services in Washington.

The parties filed cross motions for summary judgment based on these arguments, both of which were denied. On reconsideration, the trial court granted the Commission's request for declaratory relief and declared that NHF's "housing activities in the State of Washington are prohibited by law." Clerk's Papers (CP) at 1287 (footnote omitted).

NHF appealed this decision and claimed that the Commission lacked standing to bring the lawsuit.[3] The Court of Appeals held that the Commission lacked standing because it did not show that it was within the zone of interests that a statute was intended to protect and it had not demonstrated sufficient economic injury. The Court of Appeals did not reach the other issues and, instead, reversed

---

[3] NHF also maintained its claim that the court lacked personal jurisdiction over RCRC and GSFA.

and remanded with directions to dismiss. *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, No. 76510-8-I, slip op. at 10 (Wash. Ct. App. June 11, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/765108.pdf. The Commission petitioned for review, which we granted.

ISSUE

Whether the Commission has standing to bring this declaratory judgment action.

ANALYSIS

Standing generally refers to a particular party's right to bring a legal claim. When declaratory relief is sought, the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, provides that "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. We utilize the common law doctrine of standing to clarify the boundaries of this broad statutory right.[4] *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150

---

[4] The requirements for standing often overlap with the requirement that the lawsuit present a justiciable controversy. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). In its motion for summary judgment, NHF argued that the justiciability requirement was not met because any determination would be advisory rather than final and conclusive. On appeal, NHF argued only that the Commission lacks standing, so we need not address the remaining justiciability requirements. *See Five Corners Family Farmers v. State*, 173 Wn.2d 296, 302 n.2, 268 P.3d 892 (2011).

Wn.2d 791, 802, 83 P.3d 419 (2004). Standing is a question of law that we review

de novo. *City of Snoqualmie v. Constantine*, 187 Wn.2d 289, 296, 386 P.3d 279

(2016).

We have established a two part standing test in order to establish that a

party's "rights, status or other legal relations are affected by a statute." RCW

7.24.020; *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 302, 268 P.3d

892 (2011). First, we determine "whether the interest sought to be protected is

"'arguably within the zone of interests to be protected or regulated by the statute or

constitutional guarantee in question.'"" *Grant County*, 150 Wn.2d at 802 (quoting

*Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)

(quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152-

53, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970))). If so, we then determine "whether the

challenged action has caused "'injury in fact,'" economic or otherwise, to the party

seeking standing." *Id.* (quoting *Save a Valuable Env't*, 89 Wn.2d at 866). A party

seeking standing must satisfy both prongs of the test. *Branson v. Port of Seattle*,

152 Wn.2d 862, 876, 101 P.3d 67 (2004).

The UDJA is to be "liberally construed and administered." RCW 7.24.120.

Thus standing is not intended to be a particularly high bar. Instead, the doctrine

serves to prevent a litigant from raising another's legal right. *Grant County*, 105

Wn.2d at 802. But even when a party does not meet the requirements of our two

8

part test, we sometimes relax these requirements when a matter of substantial public importance would otherwise evade review. *Id.* at 803.

The Court of Appeals held that the Commission failed to satisfy either part of the standing test. We disagree. The statute that authorizes the Commission to exercise governmental authority also confers an interest against interference from unauthorized actors that purport to exercise similar governmental authority. The Commission has also alleged injury related to that interest sufficient for standing. Since the Commission satisfies our standard two part test for standing, there is no need to resort to the more liberal approach to standing we reserve for matters of substantial public importance. However, such an approach would be justified in this case.

A.     The interest the Commission seeks to protect is arguably within the zone of interests of the Commission's enabling statute

To satisfy the first part of the standing test, the Commission must identify the interest it is seeking to protect and show that the interest is arguably within the zone of interests protected or regulated by a particular statute. *Id.* at 802. The Commission argues that the statute that authorizes it to exercise governmental authority when it participates in the FHA mortgage insurance program implicitly prohibits others from acting in the same governmental capacity in Washington without similar authorization. We agree that the Commission's interest is arguably within the zone of interests protected by its enabling statute.

Our case law establishes that an actor authorized by the state to participate in a restricted area has standing to enjoin those that lack similar authorization from competing in that area. *See Day v. Inland Empire Optical, Inc.*, 76 Wn.2d 407, 416-17, 456 P.2d 1011 (1969); *Puget Sound Traction, Light & Power Co. v. Grassmeyer*, 102 Wash. 482, 489-90, 173 P. 504 (1918). And we have allowed authorized government entities to bring suit against competing government entities to establish the boundaries of each party's authority. *See Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 305 P.3d 1079 (2013); *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963). Taken together, these cases support the proposition that a party that has been delegated the authority to act in a governmental capacity in a particular area has an interest against interference from others who purport to exercise similar governmental authority without authorization.

*Day* involved a dispute between licensed ophthalmologists related to a statute that prohibited doctors from receiving any kind of compensation for referrals. 76 Wn.2d at 409. Plaintiffs sought to enjoin certain fellow ophthalmologists from practicing medicine while simultaneously operating a prescription optical business, claiming that the profits earned from referring their own patients to the optical business violated the statute. *Id.* In addressing standing, we reaffirmed our precedent holding that members of a licensed

10

profession have a legal and equitable right to seek injunctive relief against competitors operating without a license. *Id.* at 417; *see also Grassmeyer*, 102 Wash. at 490 (holding that authorized streetcar operator entitled to injunctive relief against unauthorized competitor).

Similarly, we have allowed municipal corporations to challenge unauthorized competition within their geographic territories from other government entities. In *Alderwood*, we were presented the question of "whether a municipal water district of this state can directly furnish water to the inhabitants of an area located outside the boundaries of such district but within the boundaries of another water district." 62 Wn.2d at 320. Both water districts were created pursuant to Title 57 RCW, and both were subject to a statute that stated "a water district may provide water services to property owners outside the limits of the water district." *Id.* (citing former RCW 57.08.045 (1953)). We interpreted the statute to mean that a water district may provide services outside its territory only to areas not within the territory of another district. *Id.* at 323. While standing was not at issue in the case, *Alderwood* clearly stands for the proposition that a government entity granted authority to operate in a particular space has an interest against competition from others that lack the same authority. *See also Skagit County*, 177 Wn.2d at 723-30 (applying *Alderwood* in the context of public hospital districts).

These same principles apply here. The legislature has delegated authority to the Commission to perform an essential governmental function by participating in the FHA mortgage insurance program in a governmental capacity. RCW 43.180.050(1)(e). As such, the Commission has an interest in preventing unauthorized actors from asserting similar authority.[5]

Even when a party has a demonstrated interest at stake, it must still show that the interest is arguably within the zone of interests regulated or protected by a particular statute. *Grant County*, 150 Wn.2d at 802; *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 414, 27 P.3d 1149 (2001). In *Day* and *Grassmeyer*, the statutes that authorized the parties to act in their respective areas also specifically prohibited others from doing so without authorization. Thus, the interest against unauthorized competition was clearly within the zone of interests "regulated or protected" by the statutes. Since the Commission's enabling act, chapter 43.180 RCW, does not specifically contain a similar prohibition, we must determine if one is nonetheless implied.

---

[5] Both the dissent and the Court of Appeals find it significant that the delegation of governmental authority to the Commission in chapter 43.180 RCW is not exclusive. *See* dissent at 3-4; *Wash. State Hous. Fin. Comm'n*, No. 76510-8-I, slip op. at 8. But the Commission has never claimed exclusive authority. Instead, the Commission argues that "the mere fact that the legislature has delegated similar authority to local Washington government agencies does not bar the Commission from challenging NHF's lack of authority." Pet'r Wash. State Hous. Fin. Comm'n's Suppl. Br. at 11 (emphasis omitted). All parties agree that both the Commission and the local entities are authorized to act in a governmental capacity in this area. The Commission's challenge is based on NHF's alleged lack of any kind of authority to operate as a government entity anywhere in Washington.

To ascertain whether a party's interests are arguably within the zone regulated or protected by the statute in question, we look to the statute's purpose and operation. *Five Corners*, 173 Wn.2d at 304-05. The purpose of chapter 43.180 RCW is to authorize the Commission to perform a "recognized governmental function" by acting "as a financial conduit which, without using public funds or lending the credit of the state or local government, can issue nonrecourse revenue bonds and participate in federal, state, and local housing programs and thereby make additional funds available at affordable rates to help provide housing throughout the state." RCW 43.180.010; *see also* RCW 43.180.040(1) ("The commission is an instrumentality of the state exercising essential government functions."). In furtherance of this purpose, the Commission is specifically authorized to "[p]articipate fully in federal and other governmental programs . . . to secure to *itself* and the people of the state the benefits of those programs and to meet their requirements." RCW 43.180.050(1)(e) (emphasis added). Thus, the statute operates to create a self-funded entity with the delegated authority to act on behalf of the state. It is axiomatic that an entity cannot exercise the authority of the state without authorization to do so. Thus, the Commission's interest against interference from competitors purporting to exercise such authority without authorization is implicit within its enabling act.

13

As an authorized actor in a restricted area, the Commission has an interest in excluding unauthorized actors from that space. That interest is within the zone of interests of the statute that grants the authority. Thus the Commission has satisfied the zone of interests test.

B.     The Commission has alleged sufficient injury for standing

The second part of the standing test asks whether the challenged action has caused injury in fact, economic or otherwise, to the party seeking standing. *Grant County*, 150 Wn.2d at 802. The Court of Appeals held that the Commission failed to show injury in fact because it did not provide specific evidence of economic loss. *Wash. State Hous. Fin. Comm'n*, No. 76510-8-I, slip op. at 10. This application of the injury in fact test is overly strict.

The injury in fact part of the standing test precludes those whose injury is speculative or abstract, rather than actual, from bringing an action. *Grant County*, 150 Wn.2d at 802. Our cases analyzing this part of the test have looked to the type of injury alleged rather than proof of the extent of that injury. For example, in a challenge to a statute that authorized a particular method of annexing land to a city, the fact that landowners would face a different tax rate if their land were annexed was sufficient injury for standing. *Id.* at 802-03. Even an inference of noneconomic injury is enough to establish injury for purposes of standing. Thus a special interest group satisfied the injury in fact test when its goals of preventing

substance abuse could reasonably be affected by an initiative restructuring the state's liquor regulations. *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 653, 278 P.3d 632 (2012).

The Commission alleges actual rather than speculative or abstract injury. First, the Commission complains that NHF's operations in Washington have diverted funds from its programs. In 2014 and 2015, NHF made grants in excess of $31.6 million to provide down payment assistance for loans totaling over $688 million to Washington residents. The record shows that when NHF suspended its program in Washington in 2016, some lenders switched to the Commission's programs in direct response. CP at 680-86. While the record does not show exactly how much revenue the Commission may have lost due to NHF's activities, the evidence is sufficient to support an inference that the Commission has suffered at least some economic injury.

The Commission also alleges that NHF has caused confusion among borrowers and lenders regarding NHF's status and relationship to the Commission. When NHF began offering its program in Washington, commission staff fielded numerous inquiries from lenders who thought that NHF was a commission program or that NHF had partnered with the Commission. CP at 388-89, 415. When an organization's constituency is confused, its reputation suffers. Thus the Commission had to either expend effort to clear up the confusion caused by NHF's

activities or face diminished goodwill from those it serves. Either way, the Commission is affected. In an open market, responding to disruptions and confusion caused by competitors is part and parcel of doing business. There is no actionable injury because there is no interest against competition. Here, on the other hand, the Commission asserts an interest as an authorized participant in a restricted area in being free from unauthorized competition. And confusion caused by an unauthorized actor is an injury related to that interest.

The Commission satisfies the injury in fact prong of the standing test. The record supports an inference of economic harm from diverted revenues and noneconomic harm resulting from confusion among borrowers and lenders after NHF's entry into Washington.

C.     This case raises issues of substantial public importance

Our conclusion that the Commission has standing is supported by the public importance of the issues raised. On occasion, this court has taken a "'less rigid and more liberal'" approach to standing when necessary to ensure that an issue of substantial public importance does not escape review. *Grant County*, 150 Wn.2d at 803 (quoting *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969)). An issue is of substantial public importance when it "immediately affects substantial segments of the population

and its outcome will have a direct bearing on the commerce, finance, labor, industry or agriculture generally." *Wash. Nat. Gas*, 77 Wn. 2d at 96.

We have used this approach to find standing when it was unclear whether a party had satisfied our standard two part test. For example, in *Constantine*, the city challenged the constitutionality of a statute that exempted certain tribal lands from property tax so long as the tribes negotiated a payment to the city in lieu of taxes for public services provided to the property. 187 Wn.2d at 291-92. Applying our two part standing test, it was clear that the city had suffered injury from the loss of tax property revenue, but it was "a closer call whether the city's interests [were] within the zone of interests regulated by the challenged statute." *Id.* at 296. We resolved the "close call" in favor of finding standing because the question of whether payments in lieu of taxes were constitutional would impact Indian tribes across the state and would have implications for our tax system in general. *Id.* at 297; *see also Wash. Nat. Gas,* 77 Wn.2d at 96 ("uncertain and nebulous" injury combined with public importance of issue sufficient for standing).

We have already determined that the Commission has standing to bring this lawsuit pursuant to our standard test. But even if the Commission had fallen short of the requirements for either the zone of interests or injury in fact prongs of the test, the public importance of the issues raised would militate in favor of finding standing.

17

"Decent housing for the people of our state is a most important public concern." RCW 43.180.010. When the Commission was established, "a significant portion of the state's population was inadequately housed." *Wash. State Hous. Fin. Comm'n v. O'Brien*, 100 Wn.2d 491, 496, 671 P.2d 247 (1983). A lack of affordable housing threatened a "downward spiral effect on the state's economy," and it was apparent that the private sector had been unable to correct the housing scarcity. *Id.* at 493. In response, the legislature created the Commission to perform a "recognized governmental function" to help make affordable housing available to more people throughout the state. RCW 43.180.010. As discussed above, the Commission is self funded and relies on the revenue it generates from participating in the FHA mortgage insurance program. Thus, impermissible interference with the Commission's ability to generate revenue through the mortgage insurance program would implicate the affordable housing and economic concerns the Commission was created to address. Had we found that either the zone of interests or the injury in fact question was a "close call," we still would have found that the Commission has standing due to the public importance of the issues in this case.

## CONCLUSION

We hold that the Commission has standing pursuant to the UDJA. The Commission's asserted interest against unauthorized competition is within the zone

of interests of chapter 43.180 RCW, and the Commission has shown injury in fact related to that interest. Whether NHF's activities in Washington are of the type that would require authorization from the legislature is a separate question that goes to the merits of the Commission's claim. We express no opinion on that issue. We therefore reverse and remand to the Court of Appeals for consideration of the remaining issues on appeal. RAP 13.7(b).

_____
Yu, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____

_____

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____

No. 96063-1

OWENS, J. (dissenting) — The Washington State Housing Finance Commission (Commission) sought a declaratory judgment and injunction against the National Homebuyers Fund (NHF) barring NHF from continuing to provide down payment assistance in Washington. The Commission claims that it has standing under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, arguing that its interest in prohibiting NHF from engaging in such activities in Washington is within the zone of interests regulated by the Commission's enabling act, chapter 43.180 RCW. I disagree. Because chapter 43.180 RCW does not exclude other entities, governmental or otherwise, from providing down payment assistance in Washington, and because the Commission's interest in so excluding is not one of substantial public importance, I would hold that the Commission fails to establish standing.

To establish standing, the Commission must demonstrate, in part, that the interest it seeks to protect is "'arguably within the zone of interests to be protected or regulated by the statute.'" *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*,

150 Wn.2d 791, 802, 83 P.3d 419 (2004) (internal quotation marks omitted) (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). However, the majority's general proposition that all state-authorized entities are entitled to a presumption of standing as against all entities not expressly authorized is inaccurate and overbroad. This case is distinguishable from *Day v. Inland Empire Optical, Inc.*, 76 Wn.2d 407, 456 P.2d 1011 (1969), and *Puget Sound Traction, Light & Power Co. v. Grassmeyer*, 102 Wash. 482, 173 P. 504 (1918), on which the majority relies. In both of those cases, the conduct at issue was expressly declared unlawful by positive laws (a state statute and a municipal ordinance, respectively). The interests that the plaintiffs in *Day* and *Grassmeyer* sought to protect were thus clearly within the zones of interests regulated by those laws.

Here, in contrast, chapter 43.180 RCW does not expressly declare it unlawful for entities other than the Commission to provide down payment assistance. The Commission argues that chapter 43.180 RCW implicitly prohibits other entities from doing so under the color of governmental authority. However, the plain language of RCW 43.180.010—which states that the Commission was established in order to "make *additional* funds available . . . to help provide housing throughout the state"— implies that the Commission's role is intended to be supplemental rather than exclusive. (Emphasis added.) In fact, the Commission identified in an interrogatory more than 25 entities aside from itself that provide down payment assistance in

2

Washington, including numerous municipalities and government agencies.

Furthermore, chapter 43.180 RCW contains no provision protecting the

Commission's geographic territory. Unlike *Alderwood Water District v. Pope &*

*Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963), and *Skagit County Public Hospital*

*District No. 304 v. Skagit County Public Hospital District No. 1*, 177 Wn.2d 718, 305

P.3d 1079 (2013), here, chapter 43.180 RCW does not prohibit other entities from

participating in an activity within a specified territory.

While *Alderwood* and *Skagit County* reference a "general rule" against

municipal corporations performing "the same functions at the same time in the same

territory," *Skagit County*, 177 Wn.2d at 726; *Alderwood*, 62 Wn.2d at 321, this court

acknowledged in *Alderwood* that "this so-called general rule has been virtually

emasculated by the case law of this state." 62 Wn.2d at 321. Nonetheless, insofar as

the general rule "continues to serve as a touchstone in the sense that it expresses a

public policy against duplication of public functions, . . . [it] should alert courts . . . to

the necessity of closely examining in toto statutory provisions conferring authority

upon the potentially competing municipal corporations." *Id.*

Examining closely the statute conferring authority upon the Commission as an

"instrumentality of the state," there is no plain indication that the legislature intended

the Commission to be the sole governmental entity that may offer down payment

assistance in Washington. RCW 43.180.040(1). Rather, the Commission exists to

3

augment funding for state residents who could not otherwise afford to buy homes. Ostensibly, more funding, rather than less, would better achieve that goal.[1]

Viewing chapter 43.180 RCW in toto, I conclude that it does not contemplate the exclusion of other governmental entities that seek to give money to low-income prospective homeowners. As such, I would hold that the Commission cannot establish standing because excluding NHF from providing down payment assistance is not "'within the zone of interests to be protected or regulated by the statute.'" *Grant County*, 150 Wn.2d at 802 (internal quotation marks omitted) (quoting *Save a Valuable Env't*, 89 Wn.2d at 866).

I further disagree that the instant issue is of sufficient public importance to militate in favor of standing despite that the Commission's interests fall outside the chapter 43.180 RCW's zone of interests. *See Grant County*, 150 Wn.2d at 803. The fact that "[d]ecent housing for the people of our state is a most important public concern" does not, as a matter of course, render the permissibility of NHF providing down payment assistance in Washington an issue of substantial importance. RCW 43.180.010. Rather, the Commission's pursuit of a declaratory judgment that NHF lacks authority to provide such assistance presents a narrow issue of the alleged

---

[1] *See Skagit County*, 177 Wn.2d at 738 (Madsen, C.J., dissenting) (noting that the majority's holding that one rural public hospital district may not operate within the territory of another "is contrary to this legislative intent because it has the potential to diminish rather than enhance rural patients' access to health care services").

preemptive effect of a state law, chapter 43.180 RCW, on a nonstate actor. Housing is involved only by implication. As in *Grant County*, where this court held that two fire districts did not have standing when the "only interest sought to be protected . . . [was] protection of their tax base," here, the Commission seeks to protect its revenue base by excluding NHF from the federally insured mortgage securities market in Washington. 150 Wn.2d at 804.

In sum, I would hold that the Commission's claim is not within the zone of the interests protected by chapter 43.180 RCW, nor does it present an issue of substantial public importance. Thus, the Commission failed to establish standing under the UDJA. I respectfully dissent.

Owens, J.

Gech McCoy, J.

Madsen, J.