# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMIE NIXON, a public records requestor, | No. 60265-2-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, a public agency; and its WASHINGTON STATE public agencies:<br>DEPARTMENT OF AGRICULTURE ("WSDA");<br>DEPARTMENT OF ENTERPRISE SERVICES ("DES");<br>DEPARTMENT OF FISH AND WILDLIFE ("DFW");<br>DEPARTMENT OF LICENSING ("DOL");<br>DEPARTMENT OF HEALTH ("DOH");<br>DEPARTMENT OF SERVICES FOR THE BLIND ("DSB");<br>DEPARTMENT OF TRANSPORTATION ("DOT");<br>ARTS COMMISSION ("ARTS");<br>COMMISSION ON AFRICAN AMERICAN AFFAIRS ("CAAA");<br>COMMISSION ON ASIAN PACIFIC AMERICAN AFFAIRS ("CAPAA");<br>COMMISSION ON HISPANIC AFFAIRS ("CHA");<br>COMMISSION ON SALARIES ("COS") | UNPUBLISHED OPINION |

BOARD OF REGISTRATION FOR
PROFESSIONAL ENGINEERS AND
LAND SURVEYORS, ("BRPELS");
BOARD OF TAX APPEALS ("BTA");
RECORDS AND RETENTION
TECHNICAL COMMITTEE ("Records
Committee");
CASELOAD FORCAST COUNCIL ("CFC");
HEALTH CARE AUTHORITY ("HCA");
LABOR AND INDUSTRIES ("LNI");
LAW ENFORCEMENT OFFICERS' AND
FIREFIGHTERS' PLAN 2 RETIREMENT
BOARD ("LEOFF");
OFFICE OF CIVIL LEGAL AID ("OCLA");
PUGET SOUND PARTNERSHIP ("PSP");
RECREATION AND CONSERVATION
OFFICE ("RCO");
SECRETARY OF STATE, ("SOS");
STATE ARCHIVIST;
STATE AUDITOR'S OFFICE "(SAO");
WASHINGTON MILITARY
DEPARTMENT ("MIL");
WASHINGTON STATE
PARKS ("PARKS");
WASHINGTON RECORDS AND
INFORMATION MANAGERS ("WARIM");
WASHINGTON STATE INSTITUTE FOR
PUBLIC PARTICIPATION ("WSIPP");
WASHINGTON STUDENT
ACHIEVEMENT COUNCIL ("WSAC");
WASHINGTON TECHNOLOGY
SOLUTIONS ("WaTech");
WASHINGTON TRAFFIC SAFETY
COMMISSION ("WTSC");
and JANE and JOHN DOE AGENCIES 1-
100,

       Respondents.

MAXA, J. – Jamie Nixon appeals the trial court's grant of a CR 12(b)(6) motion to dismiss his lawsuit against the State of Washington and nearly all the State's administrative agencies (collectively, the State). Nixon's lawsuit challenged the State's determination that internal digital chats can be deleted after seven days rather than retained for a longer period like many public records.

The State uses Microsoft Office 365 as a digital platform for various software services. Part of Microsoft Office 365 is Microsoft Teams, which allows for instant messaging and other communications. The State determined that Teams chats, which it considers transitory records, will be retained for only seven days and then automatically deleted.

Nixon's lawsuit asserted claims under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, and sought a writ of mandamus, alleging that the State's policy of retaining Teams messages for only seven days violated various state laws. The trial court dismissed Nixon's UDJA claim under CR 12(b)(6) because it was not justiciable and because Nixon lacked standing. The trial court also ruled that Nixon's petition for a writ of mandamus was not actionable.

We hold that (1) Nixon's UDJA claims are not justiciable, (2) Nixon's UDJA claims do not present a matter of substantial public interest such that the court should consider them despite the lack of justiciability, and (3) Nixon's writ of mandamus claim fails as a matter of law. Accordingly, we affirm the trial court's dismissal of Nixon's UDJA and writ of mandamus claims.

FACTS

Because Nixon's appeal comes to this court on a CR 12(b)(6) motion to dismiss, we rely on the allegations in Nixon's amended complaint and assume the truth of those allegations.

No. 60265-2-II

*Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 585, 551 P.3d 1067 (2024), *review denied,* 4 Wn.3d 1002 (2025).

Washington Technology Solutions (WaTech) is a state agency that acts as a "centralized provider and procurer of certain information technology services as an agency to support the needs of state agencies." RCW 43.105.006. WaTech offers technology services for state agencies, including the implementation and updating of information technology platforms and services.

WaTech hosts Microsoft Office 365 software as its main software platform for state agencies and implemented its use statewide. Microsoft Office 365 includes the platform called "Teams." Teams has a chat function that allows for digital messaging between agency computers. This includes audio, video, and written messaging.

A records retention schedule approved by the state records committee[1] discusses transitory records, which are "records created or received by the agency which are typically of short-term, temporary informational use." Clerk's Papers (CP) at 399. Transitory records are to be retained "until no longer needed for agency business [and] then destroy[ed]." CP at 399.

The State engaged in numerous discussions across agencies about the preservation of Teams chats and transitory records. WaTech ultimately implemented a retention policy for Teams chats. Teams chats are retained for seven days and then automatically deleted. Individual agencies can retain Teams chats for longer than seven days if the agency wishes. An agency may not have a retention period for Teams chats shorter than seven days.

---

[1] The state records committee was created by RCW 40.14.050, and one of its duties is "to approve, modify or disapprove the recommendations on retention schedules of all files of public records."

*Procedural History*

In 2023 and 2024, Nixon made public record requests to four state agencies seeking the production of certain documents, including Teams messages. The agencies were the Department of Agriculture, the Department of Transportation, the Department of Fish and Wildlife, and the Department of Health.

In response to Nixon's public record request for Teams chats for a seven day period, the Department of Fish and Wildlife stated that there were likely no responsive Teams chats because the chats are deleted after seven days.

In May 2024, Nixon filed a lawsuit against the State "by and through its agencies." CP at 3. In response to a motion to dismiss, Nixon amended his complaint to name the State and all its agencies individually. Nixon also incorporated by reference his declarations and appendices from his original complaint into his amended complaint. Nixon named 33 agencies, including the four agencies that received his public record requests, and "Jane and John Doe Agencies 1-100." CP at 514. The amended complaint referenced the record requests to the four agencies.[2]

Nixon asserted claims against the State under the UDJA and also sought a writ of mandamus. In addition, Nixon asserted claims under the Public Records Act (PRA), chapter 42.56, against the four agencies who received Nixon's public record requests and the Open Public Meetings Act (OPMA), chapter 42.30 RCW, against WaTech and other agencies.

Under the UDJA, Nixon sought a declaration that (1) the State's "automated destruction of public records from chat platforms violates retention standards for public records and state

---

[2] At oral argument, Nixon's counsel claimed that Nixon had sent PRA requests to almost all of the defendants. Although the amended complaint states that Nixon made PRA requests to other agencies for information about retention policies, his causes of action only reference four records requests regarding Teams chats.

statute," (2) the State "has been automatically destroying public records sought in response to [Nixon's] public records requests," (3) "the automated destruction practice without a Records Committee hearing and approving the practice violates state records management requirements," and (4) the "automated destruction of public records without oversight and application of content based retention standards violates the PRA." CP at 411-12. Nixon also alleged that his "constitutional right to hold public officials accountable and to stay informed about the actions of elected officials has been compromised from [the State's] actions." CP at 412. Unlike his PRA claim, Nixon's UDJA claims do not mention the withholding of any records by the four agencies.

Nixon sought a writ of mandamus compelling the State "to cease the automated destruction of public records with retention value and to preserve chats that are not transitory and chats that may be of nominal retention value but are still responsive to public records requests like [Nixon's]." CP at 412.

The State filed a motion to dismiss Nixon's non-PRA claims under CR 12(b)(6). The State argued that Nixon's UDJA claims were not justiciable and that he lacked standing. The State also argued that Nixon could not establish a right to mandamus relief because the State had no mandatory duty to act with respect to record retention schedules.

The trial court granted the State's CR 12(b)(6) motion to dismiss. Regarding Nixon's UDJA claims, the trial court ruled that Nixon's claims were not justiciable because the attempt to enforce state record retention laws raised only theoretical rights. The court also ruled that the PRA does not provide Nixon with a general right to enforce retention requirements. And to the extent that Nixon was seeking to enforce the PRA's document retention provision in RCW 42.56.100, the court ruled that the UDJA does not apply because there is an available remedy under the PRA. Finally, the court ruled that Nixon lacked standing to bring a UDJA claim to

enforce record retention laws because he did not fall within the zone of interests regulated by record retention laws and he had not suffered an injury in fact.

Regarding Nixon's writ of mandamus claim, the trial court ruled that Nixon could not show that the State was under a "clearly defined, mandatory, nondiscretionary duty to take any of the actions" Nixon sought to compel through a writ of mandamus. CP at 547. The court also ruled that Nixon did not have an interest in document retention policies beyond that of other citizens.[3]

Regarding Nixon's PRA claims, the trial court granted the motion to dismiss regarding the Department of Transportation and denied the motion regarding the Department of Agriculture, the Department of Fish and Wildlife, and the Department of Health.[4] However, the trial court directed entry of a final judgment under CR 54(b) regarding Nixon's UDJA and writ of mandamus claims.

Nixon appeals the trial court's dismissal of his UDJA and writ of mandamus claims.

ANALYSIS

A.    STANDARD OF REVIEW

We review de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. *Wiklem*, 31 Wn. App. 2d at 584. "We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record." *Id.* "Dismissal is appropriate where it appears beyond doubt that a plaintiff will be unable to prove any set of facts that would justify recovery." *Id.*

---

[3] The court also dismissed Nixon's OPMA claims. Nixon does not appeal the trial court's dismissal of his OPMA claims or his claim for injunctive relief.

[4] Nixon's agency-specific PRA claims are not at issue in this appeal.

Nixon attached a declaration and other documentary evidence to his complaint, which generally converts a CR 12(b)(6) motion to a summary judgment motion under CR 56. *Id.* However, review of a CR 12(b)(6) motion that incorporates external documents attached to a pleading does not need to be treated as a summary judgment motion where the "operative facts are undisputed and the core issue is one of law." *Ortblad v. State*, 85 Wn.2d 109, 111 530 P.2d 635 (1975).

Here, Nixon's appeal requires interpretation and application of straightforward issues of law regarding justiciability and mandamus relief. The parties do not dispute the relevant facts regarding the State's record retention policies. And neither party argues that we should apply the summary judgment standard of review to this appeal. Accordingly, we review Nixon's appeal under the CR 12(b)(6) standard.

B.     RELEVANT STATUTES

1.     Records Retention Act

The Records Retention Act (RRA), chapter 40.14 RCW, provides the requirements for retention, preservation, and destruction of records by state agencies. RCW 40.14.020 states that public records "shall be preserved, stored, transferred, destroyed or disposed of, and otherwise managed, only in accordance with the provisions of this chapter."

RCW 40.14.020(1) requires the State Archivist to manage state archives and records. RCW 40.14.020(3) requires the archivist to "inspect, inventory, catalog, and arrange retention and transfer schedules on all record files of all state departments and other agencies of state government."

RCW 40.14.050 creates a records committee, which has a duty to "approve, modify or disapprove the recommendations on retention schedules of all files of public records and to act

upon requests to destroy any public records." RCW 40.14.050. Destruction of public records must be done according to a retention schedule approved by the records committee. RCW 40.14.060(1).

The State Government General Records Retention Schedule, Version 6.3, "was approved by the State Records Committee in accordance with RCW 40.14.050 on October 2, 2024." WASH. ST. ARCHIVES, WASH. SEC'Y OF ST., STATE GOVERNMENT GENERAL RETENTION SCHEDULE (RETENTION SCHEDULE) 1 (version 6.3, Oct. 2024), https://www.sos.wa.gov/sites/default/files/2025-06/state-government-general-records-retention-schedule.pdf. This document contains retention schedules for various public records.

The retention schedule contains a section entitled "Records With Minimal Retention Value (Transitory Records)," which "covers records created or received by the agency which are typically of short-term, temporary informational use." RETENTION SCHEDULE at 133. Under that section is the directive "**Retain** until no longer needed for agency business then **Destroy**" for the following records:

Informational Notifications/Communications

Records communicating basic/routine short-term information (regardless of format or media used) that:
• Do <u>not</u> document agency decisions/actions;
• Are <u>not</u> used as the basis of agency decisions/actions; and
• Are <u>not</u> covered by a more specific records series.

Includes, but is not limited to:
• Basic messages such as "Come and see me when you're free," "Call me back at (360) 555-5555," etc.
• Internal communications notifying of staff absences or lateness (such as "Bob is out today," "Mary is running late," etc.), . . . ;
• Internal communications notifying of staff social events/gatherings (such as potlucks, birthdays, fun runs, cookies in the break room, etc.) or of weather/traffic

conditions (such as "Avoid I-5, it's a parking lot," "Take care – it has started snowing," etc.);

• Email delivery/read receipts, out-of-office notices, etc.

RETENTION SCHEDULE at 137.

2.   Chapter 40.16 RCW

RCW 40.16.010 states in part,

Every person who shall willfully and unlawfully remove, alter, mutilate, destroy, conceal, or obliterate a record, map, book, paper, document, or other thing filed or deposited in a public office, or with any public officer, by authority of law, is guilty of a class C felony.

RCW 40.16.020 states in part,

Every officer who shall mutilate, destroy, conceal, erase, obliterate, or falsify any record or paper appertaining to the officer's office, or who shall fraudulently appropriate to the officer's own use or to the use of another person, or secrete with intent to appropriate to such use, any money, evidence of debt or other property intrusted to the officer by virtue of the officer's office, is guilty of a class B felony.

3.   Public Records Act

The PRA presents a mandate for the broad disclosure of public records. *Green v. Pierce County*, 197 Wn.2d 841, 850, 487 P.3d 499 (2021). Courts must take into account the policy that "free and open examination of public records is in the public interest." RCW 42.56.550(3).

RCW 42.56.030 states in part,

The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created.

RCW 42.56.100 states,

*Agencies shall adopt and enforce reasonable rules and regulations. . . consonant with the intent of this chapter to provide full public access to public records, to protect public records from damage* or disorganization, and to prevent excessive interference with other essential functions of the agency . . . . Such rules and regulations shall provide for the fullest assistance to inquirers and the most timely

possible action on requests for information. Nothing in this section shall relieve agencies . . . from honoring requests received by mail for copies of identifiable public records.

If a public record request is made at a time when such record exists but is scheduled for destruction in the near future, the agency . . . shall retain possession of the record, and may not destroy or erase the record until the request is resolved.

(Emphasis added.)

RCW 42.56.550(1) states in part,

Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records.

C.     UDJA CLAIM

Nixon argues that the trial court erred when it dismissed his UDJA claim based on the ruling that the claim was not justiciable and that he lacked standing. We disagree.

1.    UDJA Provisions

The UDJA provides courts with the authority to declare rights, status, and other legal relations through a declaratory judgment. RCW 7.24.010. RCW 7.24.020 states that a person whose "rights, status or other legal relations are affected by a statute" may seek a judicial determination regarding the "construction or validity arising under the . . . statute." [5]

A court may also declare rights where a "judgment or decree will terminate the controversy or remove an uncertainty." RCW 7.24.050. But a "court may refuse to render or

---

[5] It could be argued that Nixon's claim is outside the scope of the UDJA because it does not involve the "construction or validity arising under [a] . . . statute." RCW 7.24.020; s*ee* *Bainbridge Citizens United v. Dep't of Nat. Res.*, 147 Wn. App. 365, 374-75, 198 P.3d 1033 (2008) (holding that a declaratory judgment is not an available remedy when there is no question regarding construction of validity of a regulation and the only claim is that an agency improperly applied or administered the regulation). But the State does not make this argument, so we do not address it.

enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." RCW 7.24.060.

The UDJA is to be "liberally construed and administered." RCW 7.24.120.

2. Legal Principles – Justiciability

For a court to hear a case under the UDJA, a justiciable controversy must exist. *League of Educ. Voters v. State*, 176 Wn.2d 808, 816, 295 P.3d 743 (2013). The test for a justiciable controversy includes four elements:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interest, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Wash. Fed'n of State Emps. v. State*, 2 Wn.3d 1, 21, 534 P.3d 320 (2023) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). Justiciability incorporates " ' the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement.' " *Wash. State Council of County & City Emps. v. City of Spokane*, 200 Wn.2d 678, 685, 520 P.3d 991 (2022) (quoting *To-Ro Trade Shows*, 144 Wn.2d at 411).

Relevant here, the doctrine of standing is an inherent part of the justiciability determination. *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 847, 474 P.3d 589 (2020); *see also Lee v. State,* 185 Wn.2d 608, 618, 374 P.3d 157 (2016). The foundation of the standing doctrine is that a person must be adversely affected in a concrete way by a challenged action to bring suit. *Stevens County v. Stevens County Sheriff's Dep't*, 20 Wn. App. 2d 34, 42, 499 P.3d 917 (2021). We apply a two part test for standing under the UDJA. " 'First, a party must be within the zone of interests to be protected or regulated by the statute in question. Second, the party must have

suffered an injury in fact.' " *Lakehaven Water & Sewer Dist. v. City of Fed. Way*, 195 Wn.2d 742, 769, 466 P.3d 213 (2020) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 593, 192 P.3d 306 (2008)).[6]

Division Three of this court addressed an issue similar to the one in this case in *Daines v. Spokane County*, 111 Wn. App. 342, 349-50, 44 P.3d 909 (2002), *overruled on other grounds by Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 727, 261 P.3d 119 (2011). In *Daines*, the plaintiff requested emails received by multiple county commissioners regarding growth management practices. 111 Wn. App. at 345. But the county did not have the emails because their emails were retained for only five days and were not otherwise saved. *Id.* The plaintiff sought a declaratory judgment that deleting emails after five days violated the RRA. *Id.* at 346. The County argued that "the state archivist, not the court, is responsible for establishing standards and procedures for retaining governmental records." *Id.* at 350.

The court stated, "We will not dispense academic opinions on theoretical rights. To invoke the jurisdiction of a court under the declaratory judgment act requires a justiciable controversy. A justiciable controversy is one upon which the court's judgment will have some practical effect. The proceedings must be adversary, not merely argumentative." *Id.* (citations omitted). The court stated that it could not participate in an " 'exercise in academics.' " *Id.* (quoting *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 558, 413 P.2d 972 (1966)).

The court concluded,

---

[6] Both the trial court treated justiciability and standing as separate issues, as do the parties. The Supreme Court has never suggested that the test for standing under the UDJA is more stringent than the requirements for justiciability. Both justiciability and standing essentially ask the same two questions: (1) whether the statute a person seeks to enforce through declaratory relief actually protects their interests, and (2) whether a party's violation of that statute harmed the plaintiff in a concrete manner. Therefore, we believe that the better approach is the treat standing as part of the justiciability analysis.

There is no justiciable controversy here. Mr. Daines asked the court to impose itself in a supervisory capacity over the County's office procedures. Even the court's power of mandamus does not authorize the court to assume general control or direction of official executive acts. Mr. Daines has no right under chapter 40.14 RCW that a declaratory judgment would secure.

*Id.* (citation omitted).

The parties cite to *Building Industry Association of Washington v. McCarthy*, where the court stated,

BIAW argues that unless the courts require public agencies to comply with the records retention act, chapter 40.14 RCW, agencies may easily circumvent the PRA, chapter 42.56 RCW, by improperly destroying records. While the logic of this argument is compelling, no improper destruction of records under the records retention act has been shown here so we are presented with no opportunity to determine if the law supports that logic.

152 Wn. App. 720, 741, 218 P.3d 196 (2009).

The parties also cite to *West v. Department of Natural Resources*, where the court stated,

West relies on the records retention act, chapter 40.14 RCW, for the proposition that unless courts apply this statute, agencies will circumvent the PRA and improperly destroy records. But we have rejected this argument before. *See BIAW*, 152 Wn. App. at 741 (despite this argument's compelling logic, no improper destruction has been shown).

163 Wn. App. 235, 245, 258 P.3d 78 (2011).

3. Analysis

In his UDJA claim, Nixon challenges the State's decision that Teams chats can be destroyed automatically after seven days and seeks a declaration that agencies are violating the law by not retaining Teams chats for a longer period. Nixon argues that his claim is justiciable based on (1) agency violations of chapters 40.14 and 40.16 RCW and (2) agency violations of the PRA, RCW 42.56.100.

Nixon argues at length that the State's automatic destruction policy for Teams chats violates the retention schedules mandated by the RRA and the record preservation requirement in

RCW 42.56.100. However, he does not address the threshold issue: whether he can satisfy the four elements of a justiciable controversy. *See Wash. Fed'n of State Emps.*, 2 Wn.3d at 21.

### a. Actual Dispute Requirement

The first requirement is whether there is an actual, present, and existing dispute between Nixon and the State agencies regarding retention of Teams chats. *Id.* Here, there is no existing "dispute" between Nixon and the agencies. The agency has adopted a policy that all Teams chats are transitory – with only "short-term, temporary informational use," RETENTION SCHEDULE at 133 – and therefore can be deleted after a short period of time as authorized by the general retention schedule. Nixon disagrees that all Teams chats are transitory, and he alleges that some chats involve substantive matters and must be retained longer. But this is nothing more than a speculative academic disagreement, not an adversarial conflict. Nixon provides no authority for the proposition that a person can file suit under the UDJA because they disagree with an internal agency decision.

In addition, Nixon is asking this court to dictate how agencies should apply the general retention policies. But as in *Daines*, we decline to "impose itself in a supervisory capacity" over the agencies' procedures. 111 Wn. App. at 350.

### b. Genuine Interest Requirement

The second requirement is whether Nixon has a genuine interest in the retention of Teams chats. *Wash. Fed'n of State Emps.*, 2 Wn.3d at 21. We view this requirement as incorporating the zone of interests test for standing.

"To ascertain whether a party's interests are arguably within the zone regulated or protected by the statute in question, we look to the statute's purpose and operation." *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund*, 193 Wn.2d 704, 715, 445 P.3d 533 (2019).

Merely having an interest in an issue is insufficient to show that a party's claim is within the zone of interests of a statute. *See id.* Rather, the statute a party seeks to enforce through a declaratory judgment must regulate or protect the party's relevant interest. *Id.*

Nixon argues that he is within the zone of interests of the RRA based on article I, section 1 of the Washington Constitution, which states, "All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." Similarly, he relies on RCW 42.56.030, which states, "The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created."

Nixon argues that he "pursued access to Chats to inform himself and others about use of governmental resources to generate public records with retention value without adhering to retention requirements, which impaired his state constitutional rights." Br. of Appellant at 11. He asserts that he "cannot give informed consent pursuant to his rights under [article I, section 1] when he cannot access public records that inform him what government is doing with the power delegated to it." Br. of Appellant at 11-12. Nixon states that the State's policy of deleting Teams chats "implicates [his] consent rights and his access to information to give informed consent." Br. of Appellant at 12.

Nixon also argues that the right to receive information is essential to the right of free speech. He quotes *Voters Education Committee v. Washington State Public Disclosure Commission* – "the right to free speech includes the fundamental counterpart of the right to receive information," 161 Wn.2d 470, 483, 166 P.3d 1174 (2007) – and *Fritz v. Gorton* –

16

"Freedom of speech with the corollary – freedom to receive – would seriously discount the intendment purpose and effect of the First Amendment."  83 Wn.2d 275, 297, 517 P.2d 911 (1974).

Implicit in Nixon's argument is that the purpose of the RRA is to protect the right of citizens to access public records so that they may exercise informed consent regarding their government.  He asserts, "Records retention and destruction standards under RCW 40.14 and RCW 40.16 are intended to protect public records so that the people have access to the information."  Br. of Appellant at 17.  However, nothing in the RRA states or even suggests that this is the purpose of that chapter.

The RRA provides specific guidelines for how state agencies must create retention schedules, get retention schedules approved, and preserve specific records.  But the RRA does not contain any provision that provides an individual with the right to a particular retention schedule.  Rather, it creates procedures for state agencies to follow.  Further, the RRA provides no mechanism and no private right of action for a person to challenge an agency's retention procedures.  Instead, chapter 40.16 RCW provides criminal penalties for RRA violations.

Therefore, the RRA neither regulates nor protects Nixon with respect to his claim that the agencies must adopt a particular retention schedule.  We agree with *Daines* that we cannot "dispense academic opinions on theoretical rights" and that Nixon "has no right under Chapter 40.14 RCW that a declaratory judgment would secure."  111 Wn. App. at 350.

Nixon argues that *Daines* is distinguishable because he seeks to "enforce retention standards, not judicially override them for purposes of compliance with the PRA."  Br. of Appellant at 31-32.  In *Daines*, the requestor sought "a declaratory judgment that destroying e-mails after five days violates the public records retention statutes."  111 Wn. App. at 346.  Here,

Nixon seeks a declaratory judgment that "respondents' automated destruction of public records from chat platforms violates retention standards for public records and state statute[s]." CP at 411. This is effectively the same relief sought in *Daines*.

We conclude that Nixon cannot show that he is within the zone of interests of the RRA to satisfy the UDJA's genuine interest/zone of interests requirement.

c.    Direct and Substantial Interest Requirement

The third requirement is whether Nixon has a direct and substantial interest in the retention of Teams chats. *Wash. Fed'n of State Emps.*, 2 Wn.3d at 21. We view this requirement as incorporating the injury in fact test for standing.

The injury in fact requirement "precludes those whose injury is speculative or abstract, rather than actual, from bringing an action." *Wash. State Hous. Fin. Comm'n,* 193 Wn.2d at 716. The mere fact that a person has an interest in an issue is not enough. *See Benton County Water Conservancy Bd. v. Dep't. of Ecology*, 3 Wn.3d 59, 67, 546 P.3d 394 (2024).

Nixon argues that he has suffered an injury in fact because "[t]he disappearance of chats that have retention value means [he] has lost and will continue to lose access to records with information essential to informing him about the operation of government." Br. of Appellant at 15-16. He asserts that "[l]ack of agency transparency is an injury in fact." Br. of Appellant at 16. More specifically, Nixon claims that "[t]he harm to him is that he cannot get the public records he seeks because they no longer exist." Appellant's Reply Br. at 36.

However, other than the public record requests that Nixon made to four specific agencies (discussed below), the agencies' deletion of the Teams chats has not affected Nixon in any way. The mere fact that he has an interest in the issue is not enough to establish injury in fact. *Benton County Water Conservancy Bd.*, 3 Wn.3d at 67. And Nixon's suggestion that he might want to

access those records in the future is too "speculative or abstract" to constitute an injury in fact. *Wash. State Hous. Fin. Comm'n*, 193 Wn.2d at 716.

The agencies' deletion of Teams chats potentially had an effect on Nixon regarding the public record requests he made to four specific agencies, because those chats no longer were available to produce. However, Nixon still has a viable PRA against the three agencies – the trial court denied those agencies' summary judgment motion on Nixon's PRA claim. Although an adequate alternative remedy is not a complete bar to a UDJA claim, *see* CR 57, declaratory relief generally is unavailable when the plaintiff has an adequate legal remedy. *Stafne v. Snohomish County*, 174 Wn.2d 24, 39, 271 P.3d 868 (2012) (refusing to consider a UDJA claim when the plaintiff actually pleaded an alternative remedy). Here, declaratory relief is not appropriate for the four specific agencies because Nixon pleaded a PRA claim against those agencies and retains a PRA claim against three of them.

We conclude that Nixon cannot satisfy the genuine interest/injury in fact requirement regarding the State's decision to destroy Teams chats after seven days.

### d. Summary

Nixon cannot satisfy any of the first three requirements for justiciability. Accordingly, we hold that the trial court did not err when it dismissed Nixon's UDJA claims as not justiciable.

### 4. Substantial Public Importance Exception

Nixon argues that even if his claims are not justiciable and he lacks standing, the trial court should not have dismissed his UDJA claims because they present a matter of substantial public interest. We disagree.

When a plaintiff's claim fails to meet the justiciability and standing requirements, we may exercise our discretion to address an issue in "rare cases when 'the interest of the public in

the resolution of an issue is overwhelming.' " *Stevens County*, 20 Wn. App. 2d at 46 (quoting *To-Ro Trade Shows*, 144 Wn.2d at 416). The case must present " 'issues of broad overriding public import.' " *Stevens County*, 20 Wn. App. 2d at 46 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814, 514 P.2d 137 (1973)). The Supreme Court has suggested that the substantial public importance exception should apply when a controversy " 'immediately affects significant segments of the population, and has a direct bearing on commerce, finance, labor, industry, or agriculture.' " *Lakehaven*, 195 Wn.2d at 771 (quoting *Am. Legion Post*, 164 Wn.2d at 595).

Here, whether agencies are not properly retaining Teams messages may be of some public interest. But the public interest is not overwhelming, and the issue does not affect significant segments of the population. And this case does not affect commerce, finance, labor, industry, or agriculture. Therefore, we conclude that this case is not one of those rare cases where we will consider Nixon's claim even though it is not justiciable and he has no standing.

D. WRIT OF MANDAMUS CLAIM

Nixon argues that the trial court erred in dismissing his petition for a writ of mandamus. We disagree.

1. Legal Principles

The writ of mandamus is an "ancient, rare, and extraordinary vehicle[] for relief, available only when there is no plain, speedy, and adequate remedy in the ordinary course of legal proceedings." *Walsh v. Hobbs*, 3 Wn.3d 914, 919, 557 P.3d 701 (2024). The writ of mandamus is extraordinary "because it allows courts to command another branch of government to take a specific action, something the separation of powers typically forbids." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020).

The court in *Walsh* explained the scope of a writ of mandamus:

> A petitioner seeking mandamus relief must show that the official who is the subject of the petition *has a mandatory, ministerial duty to perform an act required by law as part of that official's duties*. If the law does not require an official to take a specific action, neither may a writ of mandamus. Mandamus is appropriate only where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.

3 Wn.3d at 920 (emphasis added) (citations omitted). In other words, a writ of mandamus cannot be used to compel acts that involve discretion unless an official refuses to exercise their discretion. *Wiklem*, 31 Wn. App. 2d at 585. " '[A] court may compel a state officer to perform a discretionary duty but cannot direct how such discretion shall be exercised.' " *Id.* (quoting *Brown v. Owen*, 165 Wn.2d 706, 725, 206 P.3d 310 (2009)).

To obtain a writ of mandamus, "the petitioner must demonstrate that (1) the party subject to the writ has a clear duty to act, (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law, and (3) the petitioner is beneficially interested." *Am. Prop. Cas. Ins. Ass'n v. Kreidler*, 200 Wn.2d 654, 659, 520 P.3d 979 (2022).

2. Analysis

The first issue is whether the various agencies had a clear duty to act. Creating appropriate retention schedules may be mandatory under chapter 40.14 RCW, but there is no mandatory, ministerial duty to create any particular retention schedule. This is a discretionary decision guided by the provisions of chapter 40.14 RCW. And determining what retention periods apply to specific records does not involve mandatory, ministerial duties. Specific to this case, there is no law defining with precision and certainty when a record should be considered transitory and how long transitory messages should be retained. The classification of Teams messages as transitory under existing retention schedules is inherently discretionary.

Nixon argues that preservation of records is not a discretionary duty and that the lack of preservation amounts to a failure to exercise discretion. But RCW 40.14.040 confers discretion in agencies to appoint records officers, and RCW 40.14.020 sets forth the general duties of record preservation. These statutes inherently confer discretion to the State to appoint officers and execute the duties of record preservation in compliance with the statute. But they do not require agencies to undertake any specific action with respect to the retention of specific records. In addition, this cannot be considered a failure to exercise discretion because WaTech exercised its discretion to recommend a seven day retention period for transitory Teams messages.

The creation of retention schedules and determining the types of documents subject to certain retention schedules is an inherently discretionary act that requires judgment. *See Walsh*, 3 Wn.3d at 920. Nixon has not shown how the agencies have a "mandatory, ministerial duty to perform an act required by law." *Id.* Therefore, we conclude that Nixon cannot satisfy the first requirement of a writ of mandamus.

The second issue is whether Nixon had a beneficial interest in compelling the agencies to act. A person is beneficially interested for purposes of a writ of mandamus if they "ha[ve] an interest in the action beyond that shared in common with other citizens." *Retired Pub. Emp. Council of Wash. v. Charles*, 148 Wn.2d 602, 616, 62 P.3d 470 (2003). Here, record retention policies clearly are important to Nixon. But those policies do not uniquely affect Nixon any differently than they would affect any other citizen. And his claims about record retention policies could be asserted by any other citizen. Therefore, we conclude that Nixon cannot satisfy the third requirement of a writ of mandamus.

Accordingly, we hold that the trial court did not err when it dismissed Nixon's petition for a writ of mandamus.

No. 60265-2-II

E.     ATTORNEY FEES ON APPEAL

Nixon requests attorney fees and costs on appeal under RCW 42.56.550(4), which states that any person prevailing on a PRA claim shall be awarded attorney fees. However, Nixon's claim on appeal is not a PRA claim. In any event, Nixon is not the prevailing party. We decline to award attorney fees to Nixon.

CONCLUSION

We affirm the trial court's dismissal of Nixon's claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, A.C.J.

_____
GLASGOW, J.

23